831 So.2d 1230 (2002)
Lovy HOUSE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-835.
District Court of Appeal of Florida, Second District.
December 11, 2002.
James Marion Moorman, Public Defender, and Edward Lee Giles, Special Assistant Public Defender, Bartow, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
WHATLEY, Judge.
Lovy House appeals his convictions and sentences of several offenses arising out of his driving a stolen car that was involved in a fatal collision. We reverse House's conviction of third-degree murder.
The record shows that on August 26, 2001, Emma Sanders rented a Dodge Intrepid *1231 and parked it at her hotel near Tampa International Airport at approximately 9:00 p.m. She discovered that the car was missing the following day around 7:30 a.m. At about 1:00 p.m., the Intrepid grazed and damaged Frederick Brown's car as he was sitting at the intersection of Central Avenue and Martin Luther King Boulevard waiting for the light to change. The driver of the Intrepid was Lovy House. He did not stop but drove through the intersection on a red light. Brown called 911 on his cell phone and followed the Intrepid on Central Avenue when the signal changed in an attempt to obtain the tag number. House drove at not too fast a rate of speed at first, but he then "really accelerated" and took off. Brown stated that the Intrepid was going "a whole lot faster" than the forty miles an hour that he was driving. Brown was never able to catch up to the Intrepid to obtain the tag number. The Intrepid then crashed into another car farther up the road, but Brown did not witness the collision. The collision killed Kevin Rogers.
Valecia Sampson lived just south of the intersection at which the collision occurred. She described the area as a residential neighborhood. She saw the Intrepid traveling at "a very high rate of speed" that was unusual for the neighborhood, and she saw it swerve in an attempt to avoid hitting Rogers' car at the intersection. House had the right of way at the intersection. Sampson could not see Rogers' car because of a large tree blocking her view. She said that trees blocked drivers' views from both directions at the intersection and that drivers coming from Rogers' direction had to pull past the stop sign to see oncoming traffic. Sampson has witnessed quite a few accidents at that intersection, most of which were fender benders.
The evidence revealed that the Intrepid was stolen by someone prying the door lock, popping the ignition, and using a blunt object to start the car.
Detective David Puig, who is assigned to the hit and run traffic homicide squad, testified as an expert in accident reconstruction and speed calculation.[1] He stated that the speed limit along Central Avenue at the site of the collision was thirty miles per hour. The Intrepid was traveling at approximately sixty miles per hour before the collision. There were skid marks for approximately forty-seven feet before the point of impact, which was more or less in the middle of the intersection. Puig estimated that due to his braking, House was driving at a minimum of fifty miles per hour at the time of impact. The victim's vehicle was traveling at approximately ten to fifteen miles per hour. The day was hot, dry, and clear. The collision occurred about a half a mile and less than a minute from the intersection where House side-swiped Brown's vehicle.
Based on these facts, the State charged House with third-degree murder of Rogers, vehicular homicide of Rogers, grand theft of a motor vehicle, burglary of a conveyance, operating a vehicle without a valid driver's license and causing death or serious bodily injury, and leaving the scene of a crash. A jury found House guilty as charged.[2]
We agree with House that the trial court erred in denying his motion for judgment of acquittal of the charge of third-degree murder. Consistent with the thirddegree murder statute, § 782.04(4), Fla. Stat. *1232 (2001), the State charged that House unlawfully killed Rogers without any design or intent while engaged in the perpetration of, or the attempt to perpetrate, the grand theft of a motor vehicle.
"In any felony murder conviction the element of causation, i.e. [sic] that the homicide was committed in the perpetration of the felony, must be established." Allen v. State, 690 So.2d 1332, 1334 (Fla. 2d DCA 1997). Stated another way, the State must prove that there was no break in the chain of circumstances beginning with the felony and ending with the murder. Parker v. State, 641 So.2d 369 (Fla. 1994). Here, the State presented no evidence of when House came into possession of the Intrepid, which was discovered missing nearly six hours before the fatal collision. Consequently, "[t]he State did not prove that the grand theft and the homicide bore a sufficient connection `in point of time, place, or causal relationship' to support" House's conviction of third-degree murder. Lester v. State, 737 So.2d 1149, 1152 (Fla. 2d DCA 1999) (quoting Allen, 690 So.2d at 1334).
The State argues that grand theft is a continuing offense and that the theft of the Intrepid began right before House grazed Brown's vehicle. We agree with the Fourth District's sound rejection of this argument in State v. Williams, 776 So.2d 1066 (Fla. 4th DCA 2001):
[F]or the felony murder statute to apply when the underlying felony is theft, a "court must determine whether the killing is closely connected to the initial taking of the property in time, place, causation, and continuity of action."
* * *
If the [felony murder] rule is to have any deterrent effect, it must not be extended to killings which are collateral to and separate from the underlying felony. Moreover, requiring a close nexus between the initial taking and the killing is particularly appropriate given that the felony murder rule is "a legal fiction in which the intent and the malice to commit the underlying felony is `transferred' to elevate an unintentional killing to ... murder."
* * *
If, as the state contends, grand theft is an offense that continues throughout a defendant's unauthorized use, it would follow that a prosecution could commence ten years after the initial taking, so long as the defendant were caught using the property ten years later. However, we have held that grand theft is not a continuing offense for the purpose of the statute of limitations.... Acceptance of the continuing crime argument in this case would create an anomalya defendant could be charged with third degree felony murder even where the statute of limitations would preclude prosecution for the underlying felony of grand theft.
Id. at 1072 (quoting State v. Pierce, 23 S.W.3d 289, 295, 296 (Tenn.2000); citations omitted; emphasis in original).
Pursuant to section 924.34, Florida Statutes (2001), this court may direct the trial court to enter judgment for the lesser included offense of vehicular homicide if the evidence supports that offense. See I.T. v. State, 694 So.2d 720 (Fla.1997). House contends that the evidence does not support the charge of vehicular homicide and that the trial court erred in denying his motion for judgment of acquittal of that offense. We agree. Vehicular homicide is the killing of a person by operating a motor vehicle in a reckless manner likely to cause death or great bodily injury. *1233 § 782.071, Fla. Stat. (2001). Speed alone will not support a charge of vehicular homicide. Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983). The only evidence of the manner in which House was driving at the time he collided with Rogers is that he was speeding.
Accordingly, we reverse House's conviction of third-degree murder and remand for resentencing. We affirm House's remaining convictions.[3]
NORTHCUTT and COVINGTON, JJ., concur.
NOTES
[1] House has not shown that the trial court abused its discretion concerning the qualification of Detective Puig as an expert and the scope of his testimony.
[2] At sentencing, the trial court dismissed the vehicular homicide count because it merged into the third-degree murder count as a lesser included offense.
[3] The trial court did not err in sentencing House to consecutive terms of imprisonment. § 775.021(4)(a), Fla. Stat. (2001).