GERBER, J.
The defendant committed a shooting and, less than an hour later, caused a high-speed fatal car crash four miles away. The state, alleging that the defendant was escaping from the shooting when he caused the crash, convicted him of felony murder and other charges. The defendant challenges his felony murder convictions, arguing that the state failed to prove an *1278 unbroken “chain of circumstances” between the two events. We affirm. Even though the state could not account for the defendant’s every action between the two events, the state introduced sufficient evidence to prove that the defendant was escaping from the shooting when he caused the crash.
The defendant was at a bar around 9:30 p.m. when he got into an argument with another customer. Two bar employees took the defendant outside. When the employees returned, another customer told them that the defendant said he was going to come back with a gun. The employees went to lock the bar’s door. When they reached the door, they saw the defendant leaning over his car, aiming a gun at them. The defendant fired three times, but missed. The defendant got into his car and sped away. The police began looking for the defendant, but they could not find him.
Meanwhile, the defendant went to another bar, arriving at about 10:00 p.m. Around 12:30 a.m., he went outside and got into an argument with another customer. The defendant went to his car and got his gun. He came back and shot the man three times, none fatally. A bartender ran outside and yelled that the police were coming. The defendant fired a shot in the air, then got into his car and “punched it,” according to the bartender.
A witness driving past the bar saw the shooting and saw- the defendant speed away. She called 911 at 12:53 a.m. She followed the defendant as he turned down a side street, then made a u-turn. As the defendant made the u-turn, the police approached with their overhead lights on. The defendant switched off his car’s headlights and disappeared down another side street. The police continued to look for the defendant.
Forty-six minutes later, at 1:39 a.m., and approximately four miles from the second shooting, the police were staked out at the defendant’s residence along a state road. The police saw the defendant’s car speed past, at what they estimated as 100 miles per hour, heading towards the interstate highway. The defendant ran two red lights before crashing into a car containing a husband and wife and their pregnant daughter. The crash killed the husband and wife, severely injured them daughter, and killed the unborn child. The defendant survived with minor injuries. His car’s speedometer was frozen at 105 miles per hour.
The state charged the defendant with several crimes. For the first shooting, the state charged the defendant with aggravated assault involving the discharge of a firearm, and shooting a deadly missile. For the second shooting, the state charged the defendant with attempted first degree murder. For the crash, the state charged the defendant with two counts of first degree felony murder of the husband and wife, and one count of attempted felony murder of the daughter, based on the allegation that the defendant was escaping from the second shooting when he caused the crash. The state also charged the defendant with three counts of vehicular homicide, one count of killing an unborn child by injury to the mother, and one count of reckless driving causing serious bodily injury.
The jury found the defendant guilty of all charges except attempted first degree murder for the second shooting. On that charge, the jury found the defendant guilty of the lesser included offense of attempted second degree murder. The trial court sentenced the defendant to life in prison without the possibility of parole based on the convictions for felony murder, attempt *1279 ed second degree murder, and killing an unborn child. This appeal followed.
The defendant argues that the state failed to prove felony murder because it did not prove a causal connection between the second shooting and the crash. Specifically, the defendant contends that, although forty-six minutes passed between the defendant’s leaving the second shooting and the crash, the locations of those events were only four miles apart. According to the defendant, had he been fleeing the shooting, it would have taken him only a few minutes to go from the shooting location to the crash scene. However, the defendant claims that, because the state failed to prove an unbroken chain of circumstances, no reasonable jury could have found he was in perpetration of fleeing the second shooting at the time of the crash.
Recognizing that he did not present this argument to the trial court, the defendant contends that his argument is reviewable for the first time on appeal because a conviction upon insufficient evidence constitutes fundamental error. See F.B. v. State, 852 So.2d 226, 230-31 (Fla.2003) (“[A]n argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be preserved. Such complete failure of the evidence meets the requirements of fundamental error — i.e., an error that reaches to the foundation of the case and is equal to a denial of due process.”); Smith v. Crosby, 872 So.2d 279, 283 (Fla. 4th DCA 2004) (“Where such fundamental error occurs, an appellate court will forgive the failure of preservation and review the legal sufficiency of the conviction on appeal.”).
The state properly acknowledges that the defendant can raise the sufficiency of evidence for the first time on appeal. On the merits, the state argues that it submitted sufficient evidence to prove the crash occurred during the defendant’s escape from the second shooting. The state contends that the defendant’s evasive maneuvers after the second shooting, combined with his speeding down the state road forty-six minutes later, indicate he knew he was being sought for the shootings, and he was attempting to avoid capture.
The supreme court articulated our standard of review in Pagan v. State, 830 So.2d 792 (Fla.2002):
Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.
Id. at 803 (internal citations omitted). Applying that standard, we find that the defendant’s known actions between the second shooting and the crash were sufficient to prove that the defendant was escaping from the shooting when he caused the crash.
According to the standard jury instruction for first degree felony murder, as used in this case, the state had to prove, among other elements, that the husband’s and wife’s deaths occurred as a consequence of the defendant escaping, and while the defendant was escaping, from the immediate scene of the second shooting. See Fla. Std. Jury Instr. (Crim.) 7.3 (“To prove the crime of First Degree Felony Murder, the State must prove ... [t]he death occurred as a consequence of and while (defendant) ... was escaping from the immediate scene of (crime alleged).”). The standard jury instruction derives from section 782.04, Florida Statutes (2005), which provides, in pertinent part: “The unlawful killing of a human being ... [w]hen committed by a person engaged in *1280 the perpetration of, or in the attempt to perpetrate, any ... [m]urder of another human being ... is murder in the first degree ....” § 782.04(l)(a)2.o., Fla. Stat. (2005) (emphasis added).
We more fully explored the term “in the perpetration of’ in Wagner v. State, 921 So.2d 38 (Fla. 4th DCA 2006):
The term “in the perpetration of’ includes the period of time when a [defendant] is attempting to escape from the scene of the crime. Absent some definitive break in the chain of circumstances beginning with the felony and ending with the killing, the felony, although technically complete, is said to continue to the time of the killing. The State must prove that there was no break in the chain of circumstances beginning with the felony and ending with the murder.
Factors such as the relationship between the underlying felony and the homicide in point of time, place and causal relationship are important in determining whether there was a break in the chain of circumstances. In the case of flight, an important consideration is whether the fleeing felon has reached a place of temporary safety. If the killing is a predictable result of the felonious transaction, [n]either the passage of time nor separation in space from the felonious act to the killing precludes a felony murder conviction.
Id. at 40-41 (internal quotations and citations omitted).
Here, the state introduced sufficient evidence to prove that there was no break in the chain of circumstances beginning with the second shooting and ending with the crash. Only forty-six minutes passed between the defendant’s flight from the second shooting and the crash, and only four miles separated the two events. Immediately after the second shooting, the defendant was making evasive maneuvers, indicating that he knew he was being sought, and that he was attempting to avoid capture. Forty-six minutes later, the defendant, driving approximately 100 miles per hour, sped past his residence — -a likely “place of temporary safety” — and ran two red lights while en route towards an interstate highway. These facts support an escape theory, and make the crash a predictable result of the escape from the second shooting.
These facts are most similar to the case upon which the state primarily relies, Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990). There, two brothers robbed and kidnapped a man who was stopped along an interstate highway. The robbers drove to a gas station, where the victim escaped. The victim approached one of the robbers inside the gas station, which prompted the robbers to get in their vehicle and flee. A bystander followed the robbers. The robbers traveled up and down several streets. The robbers then stopped at a convenience store to ask for directions to the interstate highway. The robbers got on the highway heading towards a city where they had a hotel room. When sheriffs deputies began following them, the robbers fled at between 100 and 110 miles per hour. Further down the highway, a deputy set up a roadblock. That deputy was killed when he was struck by a pursuing deputy’s vehicle. Other deputies later captured the robbers. The entire incident, from robbery to capture, took no more than an hour.
The robbers were convicted of second degree felony murder for the deputy’s death. The robbery served as the underlying felony. One of the robbers appealed, arguing that the robbery could not serve as the underlying felony because the robbery was complete before the deputy’s death. The first district, applying the fac *1281 tors which we later adopted in Wagner, held that the robbery was not complete before the deputy’s death. 570 So.2d at 1052. The court reasoned that the time from the robbery to the death was no more than an hour, the death occurred no more than several miles from the robbery, and the only stops that the robbers made, to get gas and directions, were made to accomplish their goal of fleeing from the robbery to a place of safety, their hotel room. Id. The court concluded that these facts established a causal relationship between the robbery and the deputy’s death which was sufficient to support the felony murder conviction. Id.
Only one material distinction exists between Parker and this case. In Parker, the state appears to have accounted for the entire chain of circumstances from the robbery to the crash. Here, as the defendant points out, the state could account for only the first and last few minutes of his actions in the forty-six minutes between the defendant’s flight from the second shooting and the crash. The state presented no evidence of where the defendant was the remainder of that time. And, as the defendant notes, after the first shooting, he did not flee, but simply went to another bar.
However, we hold that the state did not have to account for the defendant’s every action between the second shooting and the crash to prove there was no break in the chain of circumstances between the two events. Rather, the state’s evidence of the defendant’s known actions between the two events was sufficient to prove that the crash was a predictable result of the defendant’s escape from the shooting. See Wagner, 921 So.2d at 41 (“If the killing is ‘a predictable result of the felonious transaction,’ ‘[njeither the passage of time nor separation in space from the felonious act to the killing precludes a felony murder conviction.’”) (internal citations omitted).
To hold otherwise would reward an escaping felon, such as the defendant, who successfully evades pursuit, even for a few minutes. We already have addressed such a factual scenario in the state’s favor. See State v. Hacker, 510 So.2d 304, 306 (Fla. 4th DCA 1986) (state established prima facie felony murder case even though witness lost sight of fleeing robbers for two minutes before witness reached fatal crash). Conversely, we also have recognized that a temporal break may be too attenuated to support a conviction. See State v. Williams, 776 So.2d 1066, 1071 (Fla. 4th DCA 2001) (affirming felony murder acquittal where state acknowledged that defendant, after stealing vehicle, had reached several places of temporary safety during next twenty-four hours before causing fatal crash). Because temporal breaks can vary, each situation should be examined on a case-by-case basis.
The defendant, relying on Williams, argues that the statutory “rule of lenity” must be applied when determining whether a killing occurred “in the perpetration of’ a felony as that phrase is used in section 782.04, Florida Statutes. The rule of lenity provides:
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
§ 775.021(1), Fla. Stat. (2005). The defendant’s reliance on Williams for application of the rule of lenity is misplaced. In Williams, we applied the rule to section 782.04(4)’s reference to “any felony” to determine whether to measure the chain of circumstances from a carjacking or a grand theft. We did not apply the rule to section 782.04(4)’s reference to “in the *1282 perpetration of.” Instead, we interpreted that phrase in Wagner, as stated earlier in this opinion.
Like Williams, the other cases upon which the defendant relies for reversal are distinguishable because, in those cases, the appellate court found a large temporal break in the chain of circumstances between a felony and a crash. See House v. State, 831 So.2d 1230, 1232 (Fla. 2d DCA 2002) (state presented no evidence of when defendant came into possession of stolen vehicle discovered missing nearly six hours before fatal crash); Lester v. State, 737 So.2d 1149, 1151-52 (Fla. 2d DCA 1999) (defendant was not fleeing scene of crime when he caused crash while driving car which someone stole the previous evening); Allen v. State, 690 So.2d 1332, 1334-35 (Fla. 2d DCA 1997) (break in chain of circumstances occurred between early morning hours when someone stole car and later that evening when defendant was involved in crash while driving stolen car).
In this case, however, the temporal break between the felony and the crash was relatively short — approximately forty-six minutes. When combining that short time span with the defendant’s evasive maneuvers, driving approximately 100 miles per hour, speeding past his residence, and running two red lights while en route towards an interstate highway, the state introduced sufficient evidence to prove there was no break in the chain of circumstances between the second shooting and the fatal crash. The crash was a predictable result of the defendant’s escape from the shooting. Therefore, we affirm the defendant’s felony murder convictions.

Affirmed.

POLEN and MAY, JJ., concur.